314-0547, The Chrysler Group, Appellant by Kevin Hines v. Illinois Property Tax Appeal Board and the Will County Board of Review, Appellees by Evan Segal. Kevin Hines. May it please the Court, Counsel. My name is Kevin Hines. I'm here on behalf of the petitioner, the Chrysler Group. This is a direct appeal from the Property Tax Appeal Board's denial of my client's claim for what's known as developer relief under Section 1030 of the Property Tax Code. And the reality is why we're here is a mistake. In retrospect, some might call it a dumb mistake or an oversight, but a mistake nevertheless. We're really here because of an errant signature on a plat that was filed with the Will County Recorder of Deeds Office. But what seems to be, before we jump into the arguments, and I'm really just standing on my briefs, I just want to highlight a few things. What's gotten lost is what statute we're dealing with here and what's really important. It's the developer relief provisions of the Property Tax Code. And here what it says is that under counties such as Will County, the planting and subdivision of separate lots should not increase the assessment, assuming certain conditions are met. And the only condition that's at issue here is Condition 1, which says the property is platted and subdivided in accordance with the Platt Act. Let me ask you then, doesn't it turn on whether that's even applicable of whether the land was platted when your client bought it? I agree. And I'll address that because that was really the 2010 decision by the PTAB. But before we get there, the understanding is what the developer relief is and what it's not. It's not an exemption. And throughout the state's brief, or PTAB's brief, they cite the City of Chicago case for some sort of heightened standard or burden of proof. We all agree on the standard of review here. What they're saying is there was a heightened burden of proof below the PTAB. This is not an exemption. But would you agree that 1030 protects somebody who takes vacant land or whatever and plants it and it protects them from reassessment? Exactly. But then that is lost on the first sale under 1030. The first sale after the planting. After the planting. That's 1030C. Doesn't that leave us with a question of, for the purpose of the Platt Act, what constitutes planting? Correct. Here we platted according to the Platt Act. My client did the platting. The facts here are not in dispute. The sequence of events and what happened. It's the implication of those events that's the problem. On January 2nd, 2007, the Archdiocese of Joliet, the former owner, an exempt entity, and my client agreed to the sale of the property. Which was all unplanted land. Exactly. It was vacant, undeveloped land. Between January 2nd and January 31st, what problems come up? There was a platt. Nobody denies that. There was a platt in existence that subdivided the property into 50 some odd lots. On January 8th, my client, at the direction of his engineer, had the diocese sign the platt. At that time, the diocese owned the property. On January 29th, the sale closed. And at that point, my client became the owner of the property. I disagree. It had not been platted. At that point, all you had was a piece of paper with a bunch of lines on it. Nobody acknowledged it. Nobody did anything with it. Frankly, other than my client and the diocese, nobody was aware that it existed. It goes down to the bottom line. What constitutes platting? Was it the signing of the platt or is it not platted until that document is recorded? What constitutes platting? For a statutory platt, it has to be recorded. For a common law platt, a common law platt can exist without recording. Those are the cases that both sides have cited as to what is a common law platt. Our position is that there was a statutory platt. The problem that everybody is focusing on is the wrong signature. On January 31st, after the sale had closed, my client took the deed and the platt, which is attached to the deed, and recorded them simultaneously. The time stamps are identical. The only difference is the platt ended up with an earlier base number. But isn't the problem that the deed references a platt, which arguably says that your client bought a platted bunch of lots? Because you described the property, don't you, with reference to the platt? Well, my client bought land. It couldn't have been statutory platted until it was registered. But a common law platt, there has to have been some acknowledgement by the public, specifically Will County. Somebody had to adopt that platt. Between January 2nd and January 31st, Will County didn't know anything about the platt. Nobody did. My client could have created a new platt. The only problem with this platt was the owner's signature platt. I mean, it's as significant as he spelled his name wrong or the thing was left blank. So the developer gets this benefit, what's called a benefit, which it is, if the developer files or records, however you want to look at it, records the deed and the platt at the same time, and it's all under the developer's signature? Or is it possible that the developer just files the deed for unplatted land, meets and bounds descriptions of a piece of property, and then later files a platt? Do they then get the benefit of the filing of that platt later? Yes, they could. As long as the assessor doesn't change the classification before the platting is done. Here, the reclassification from vacant or farmland didn't occur until after the platt has been recorded. And at that point, Will County now has knowledge. They have the platt in hand. Everybody knows it exists. Before that, nobody did. And that's one of the problems with the decision that's at issue here is the PTAP hearing officer determined that we had acquired a platted and recorded subdivision, which is actually inconsistent if you say ownership changed hands on January 27th, when the sale closed. And that's what everybody to this case has acknowledged. That's when ownership changed hands. So we could have acquired a recorded platt if it didn't get recorded until four days later. So now PTAP's brief has taken the position that the PTAP hearing officer could have found a common law platt. But the inconsistency there is they have said throughout this case that the petitioner cannot rely on a common law platt for purposes of getting the relief, but they're saying that the hearing officer could have found a common law platt to take us out of it under 10C, 1030C. They're logically inconsistent. You can't have it both ways. Really what's at issue here is the significance of the owner block, the ownership block signature. The very factually specific case is not like any other of the developer cases this court has heard. So, I mean, you could have simultaneous recording if the owner block signature was your client's signature? Yes. And frankly, that's what occurred here. They were recorded simultaneously. The problem is the significance of the ownership block. The diocese signature was on there. That's undeniable. But they didn't own the property. They had no intention of developing it. There's testimony in the record from the diocese. They just wanted to get rid of it. Here, everybody knew it was my client, the respondent, who wanted to develop the property, own the property at the time of recording. Well, if I own property and I think I can sell it for more money if it's platted, but yet I have no intention of – whether I intend to develop it. Most people that sell real estate intend to make money. And so, even if I've got no intention of developing it myself, but if I think for whatever reason this property is worth more money platted as opposed to un-platted, what does my – what's that got to do with whether I've platted the land or not if I'm platting it? Because, in other words, it seems to me that the platter's intention of future development is kind of irrelevant. I agree with you that it's irrelevant, but below, Will Cownan made an issue of the fact that – But that's not the case. And if you accept a deed, and you accept a deed that refers to your buying platted land, isn't that an acknowledgement by you that you're buying platted land? No, it's not. Because, I mean, frankly, it was Scrivner's problem in developing the deed. The deed was created well before the recording. At the point, it says, you know, the numbers are blank. You know, the recording numbers are blank. It was really just what they acquired was a piece of undeveloped land. There happened to be a plat available, but it didn't mean they were going to do anything with it until they recorded it is when the property became subdivided. Again, the issue really here is what's the significance of the signature plot? Everybody's actions, other than Will Cownan's assessor's office – Well, doesn't the Plant Act say that the plant has to be signed by the owner? Yes, it does. So that makes the signature kind of significant, doesn't it? It makes it significant, but the significance here has been elevated to something that's not correct by the Will Cownan – but, frankly, only by the Will Cownan assessor. You have the Will Cownan recorder accepted the deed. The Will Cownan recorder took action on the deed, created pins – or, excuse me, the plat created pins. The assessor issued assessments. The treasurer issued tax bills, all based on this plat. Nobody had a problem with it. Nobody had a problem with the signature block until we came in looking for developer relief. Then it became a big issue of, well, you didn't sign the plat. Okay, well, that's only the assessor saying that. The assessor has taken the position it's an unveiled plat. We've been at this for several years. There's no evidence in the record that the Will Cownan recorder had any problem with the plat. And then we filed a certificate of correction in 2013, frankly, at the suggestion of the Will Cownan state attorney's office during a hearing. And she said, if I buy planted land, but let's say the person who planted it hadn't actually recorded the plat. But I go out and buy planted land, and then I realize whether I knew before or after that that plat hadn't been recorded, and I go in and record it. Why in the world would the recorder have a problem with it? You give them a document, he or she records it. I mean, why would you expect them to say, gee, this isn't right, and reject it because of whose signature was on it? That's not the recorder's job, is it? Frankly, yeah, I think they have a responsibility to look at the documents that are filed. You have Chrysler Group standing before you with a deed that says Chrysler Group is buying this property. Attached to the deed is a plat dividing on the property signed by somebody other than the Chrysler Group. There seems to be an inconsistency there. But it's signed by the transferor. The deed is signed by the transferor, so why would that cause somebody to say, gee, throw up a red flag that it was recorded? Okay, the transferor planted this, hadn't recorded it, now they've transferred it to Chrysler Group, and Chrysler Group wants to make sure it's recorded. But that presupposes that the property has been planted. Here, it wasn't planted until recorded. All we had before it was recorded was a document with a bunch of lines on it. There was no significance to it. The hearing officer at PTAB seemed to have placed some emphasis on it, but there's no basis in the record for it, and there's no basis in the law for it. But if you're saying then a common law plat could take us out of the developer relief under Section C, then it could keep us in under Section A if you determine that there's not a common law plat before the recording, but there is one after. Again, in large part, our point is, even after this issue came up, nobody in Will County had a problem with it other than the assessment. We went to hearing on this 2008 case, the PTAB said, well, you didn't have the right to second try. That's the issue. During the hearing, the state's attorney said, well, if they correct it, they get developer relief. Our opinion really is just correcting what amounts to a typographical error. The plat was good all along. Everybody knew who the owner was. Everybody acknowledged who the owner was. My client petitioned. All we were doing was correcting, again, what really amounts to a typographical error. Does it have a non-proton effect? Our opinion, yes. Unfortunately, there's nothing, and this was raised below it, there's nothing in the plat act that says you can or cannot do this. We did it at the suggestion of the state's attorney's office. We put on testimony during the 2010 case that the Will County recorder's office does this regularly. Well, but if your client went to the bishop before closing and said, here, we want you to sign this plat, how does that, how do we convert that into a typographical error? As I said in the beginning, it was just a simple mistake. Well, it might not have been a mistake, but it might have been a mistake because what the legal consequences were of that signature. But that legal mistake and the typographical error aren't equal. Well, what I'm arguing here is there were no legal consequences, no legal effect of it. It was just an oversight because the plat act says the owner has to acknowledge and record the plat. The diocese didn't record the plat. The owner didn't. The petitioner. So the signature, if anything, is acknowledgement. Exactly. Okay, but not, okay, there was no further action beyond acknowledgement. Exactly. And so you're saying the legal effect to deny developer relief is recording. Correct. And you're saying that constructive recording was by you. Correct. And platting and subdividing was done by. Well, I mean, recording was done by you, but I meant the plat filing was. Done by the owner, the petitioner. Yeah, constructive, even though the signature line suggests otherwise. Correct. Two minutes. So the significance of the signature block is diminished by the fact that we did the certificate of correction. The testimony was that the Will County Courthouse office does this regularly. There was no testimony to the contrary. What do they do regularly? They accept certificates of correction like this and they don't deem it. On plats? On plats. There were arguments by the new state's attorney that, well, this is different because it's an ownership block. If it were a legal description that had the wrong number in there, it might be different than range 7 versus range 8. Well, if that's the argument, that there's a lot of qualitative range here of certificates of correction, my position is, well, the wrong signature is a lot less significant than you having the wrong property range because you're talking about two different properties. Range 7 and range 8 might be at different ends of the spectrum. If you're simply talking about correcting the signature block and all things remain the same, the significance of the signature is diminished. Yes, the owner should have signed it. The petitioner should have signed it. They did. They corrected it. But prior to that, nobody had a problem. Everybody acknowledged who the owner was. All the tax bills were sent to the owner, the petitioner. The assessments were sent to the petitioner. Well, I don't mean to be flippant, but, I mean, legally, I think the question is to that is so what? I mean, I think at the end of the day, the issue is not whether legally you purchase planted land because if they didn't purchase planted land and they planted it, then they're entitled to the relief exemption, whatever you want to call it, under 1030. is exhausted after the first sale. It is no longer available. Well, the only way you could find that my client bought a platted piece of property is to find that the actions between January 2nd and January 29th when the sale closed constitute a common law plat. But they can't. Nobody did anything. Yes, the diocese signed the plat. Yes, my client was aware of the plat. But in order to be a common law dedication, you have to have some acknowledgement and acceptance by the public. Here, Will County. Will County didn't have any idea the thing existed. At least there's no evidence in the record that they had any idea that it existed. So there could have been a platting before my client recorded it because, frankly, the plat didn't exist. It was just a piece of paper with no legal significance. See my time's up. So, again, we request that you reverse the PTAB's decision and grant my client relief under Section 1038. Thank you, Your Honor. Mr. Segal. Good morning, Your Honors. Gaffney is the court counsel. Your Honors, this court should affirm the Boren's decision because there's nothing ambiguous or unclear about the requirements of either one, Section 1030 of the Property Tax Code, or secondly, Section 2 of the Plat Act. Unfortunately, for Chrysler Group, it simply failed to comply with either one of these provisions, as the court well understands. The requirements were simple and straightforward. And I'm going to begin with the standard of review, which is de novo here, but the Board's interpretation of the statutes that it enforces are entitled to substantial deference. That takes us to the plain language of Section 1030A of the code. There are two instances in which it doesn't apply, in which developer's aid doesn't apply. The first, as you've heard, is when the property is not properly platted and subdivided in accordance with Section 1030A. And the second one brings to bear the Plat Act, which we've heard about this morning, when someone other than the taxpayer itself plats and subdivides. Focusing on the second requirement here, which looks backwards from the time, from the point of sale, the record shows that the diocese and not Chrysler Group had platted and subdivided the property. There's testimony in the record by Marlon Eckhoff, who's a representative of the Chrysler Group, that he asked the bishop to sign the plat. That's not a typo. It's not errant. It's not a Scribner's error. The diocese, the bishop on behalf of the diocese, did that well before the party closed on January 29th of 2007 and before the recording of the plat indeed on January 31st. The bishop signed the plat on January 8th, three weeks earlier. So the board, therefore, correctly concluded that Chrysler Group purchased a platted and recorded subdivision. And the key documents describe the property as platted and subdivided, not a single unit. Again, the diocese owned the property at the time of the platting, and Chrysler Group did not. Under 1030C, no developer's relief applies. And on that basis alone, the board reached the correct decision. That's a sufficiently independent basis to affirm, and the court can stop there if it wishes. But there's a second independently sufficient basis to affirm, and that involves the Plat Act, which comes to apply under Section 1030A1, requiring platting in accordance with the Plat Act. Couldn't be more clear or unambiguous, just like Section 1030C. It says simply, a plat must be completed, quote, and acknowledged by the owner of the land, unquote, at the time of the recording. That's a reference to a statutory plat, but Chrysler Group didn't comply because it did not sign the plat at the time of the recording. And here the critical date is January 31st, 2007. The bishop, again, is the one who signed on January 8th. That doesn't satisfy Section 2 of the Plat Act, and therefore fails Section 1030A1 of the property tax code. Tell me about the significance of the certificate of correction. I don't believe there is any certificate of legal significance, Your Honor. We heard reference to testimony that the county accepts these as a matter of course, but what we didn't hear was that the same witness said that he wasn't aware that it had any legal effect. We mentioned that in the brief. There's no statutory allowance in either of the two provisions that we're talking about for any sort of after-the-fact correction by a certificate of this sort. And there's a good reason for that. If we allowed such corrections to occur, to your point, Justice Schmidt, about people at the window of the recorder's office just accepting documents and not being the lawyer or the accountant who proofreads them, then nothing filed would ever have any finality. We couldn't rely on them. And here it's worth noting that the certificate was filed six years after the fact of the so-called error. So that doesn't cure the certificate of correction, the so-called certificate of correction doesn't cure this problem. Are you saying that no certificate of correction ever corrects anything legally? I don't know if I can answer that. There may be, and I can't say that categorically. No, I can't say that categorically. In this circumstance, given these two provisions that we're looking at, no, there was no legal result from that filing. There may be other provisions that come to bear that I'm not aware of that reference certificates of correction. There may be minor functionary issues in this office that are corrected. When there is a true Scrippner's error, Siegel is misspelled, for instance, that has no legal significance, but not here. So there are two independent reasons why they're not confirmed. We've touched upon one of Chrysler Group's arguments for why it should evade the plain language of these provisions. I'd like to just touch briefly on some of their other arguments. Well, let me just, I mean, from a factual standpoint, it would seem obvious that, I mean, in reality, the fact of the thing was it was Chrysler that planted this land, and for, apparently, for whatever reason, somebody thought there was some legal advantage to doing it the way they did it, but, and having the planting done, and like I said, Stephen referred to plants in the deed, but, and their intention was, I mean, the reality was it was Chrysler who planted this land, and then they just gave a document to the bishop and said, here, sign here, and he said, you'll give me $920,000, I'll sign anywhere, and then they wait to report it. So the reality was, so you've got here just this, you know, the order in which these documents were signed and by who they were signed obviously ended up having a huge legal consequence, and can that be corrected? I don't think it can. We know there are so many areas in the practice of law that the wrong signature or the absence of a signature or two inverted words have huge legal consequences, and there was some legal advantage, as you point out, Your Honor, or a financial one, or it's just plain error to ask the bishop to sign this document. The motivations and the reasons for making that request are not clear, but it happened, so it's not the equivalent of a blank on the space. Legislative purpose and intent, which they've argued, helping developers don't come into play, because there's no ambiguous language in these provisions. You don't have to go beyond plain words. Second, the provisions won't be rendered meaningless if this set of errors for this petition has the result that developers' aid doesn't come to their benefit. In other situations, of course, someone will get it. Third, and you've referred to this, Your Honors, the county's execution of ministerial functions, what county officers do, triggered by the filing of a defective plat, has no bearing on compliance with the code or the plat act. As you said, Justice Schmidt, so what? The recorder's office carried forth and issued numbers, et cetera. Well, and because a document's recorded doesn't mean it can't be legally challenged. You say the recorder's office records documents. That doesn't mean in the scope of somebody can't come in later and can't explain or whatever. That doesn't make it some old stamp of approval that that document can never be challenged because it's recorded. Correct. And there's no carve-out or safe harbor, as we've said, under the plat or code for corrective filing. And the court shouldn't take up Chrysler Group's invitation to rewrite those provisions by reading in the certificate of correction. I mentioned the six-year delay. Okay. Ultimately, the Chrysler Group says in its briefs, in its reply brief in particular, that the plat's only defect was that the petitioner's name was not on the plat. The only flaw with their legal compliance was the missing signature. That is the whole game. It's meaningless to say that that's the only flaw. It's the whole flaw, and it's consequential. The signature was essential and required, and in short, Chrysler Group complied with neither the Plat Act nor Section 1030 of the code. So there are no further questions. We ask that the Court confirm. Yes, Your Honor. Thank you, Mr. Segal. Mr. Hines. Your rebuttal. Please, the Court. Counsel is correct. The motivation behind the signing of the plat is not in it. In the record, negotiations for the contract began well before January 2nd. What is in the record is that the advice and recommendation of the engineer, he obtained the signature. There's no information in the record about did it affect the purchase price. The Plat Act requires the acknowledgment and recording by the owner. That happened here. The owner recorded the plat. The acknowledgment, it was incorrect for a time. We had the wrong signature on the document. But it's not as significant as Counsel P. Tevin, only the Will County Assessor, has made. Yes, it was six years, but what's not in the record is we spent years trying to negotiate with these people, and it was only upon hearing after the 2008 case that this was really an option that was offered to us. So we did it. Again, certificates of correction. I'm still not real clear on what the state's position is here. There's nothing in the Plat Act that allows these, but it sounds like on certain circumstances you can if you spell counsel's name wrong, you can correct it. Well, again, then you're creating this spectrum of what can be corrected and what can't be corrected. The reality is Will County Recorder's Office does it. They do it. The only testimony in the record is they do it. They do it regularly. Your argument is a misspelled name is the wrong name. Exactly. Okay. No different than having the incorrect name. Well, that's the same thing is what you're saying. Yes. It's the same as having it blank. Are you saying that your client meant to have somebody from Chrysler sign that and they accidentally took it to the bishop? No, that's not what I'm saying. What I'm saying is at the time, and the testimony was the engineer instructed Mr. Eckhoff to have the diocese sign it, because at the time they owned it, the diocese. The testimony was he should have changed it. It was a mistake. He should have fixed it before he recorded it, and he didn't. But the certificate of correction does correct the mistake. It's not an amendment. It's just adopting what everybody else. How would he have changed it? Put a new signature block on there. And obliterate the diocese.  The diocese couldn't have recorded a plat to property it didn't own. When the sale closed is when ownership transferred. Everybody's in agreement on that. The diocese could not have recorded a plat that it doesn't own. It can't acknowledge anything. It doesn't own. The same came up in the Wilmette Bank case. Did it own at the time this engineer said, I want the bishop to sign? At that time, yes. Legally, they owned it. It wasn't until the sale closed that the transfer of title occurred. But back to these certificates of correction. They either are allowed or they're not. If they're not allowed under the Plat Act, then we're going to end up with a result that's absurd. You say to the Will County Recorder's Office, you can't do this. So every plat they've corrected to date is faulty. Will County Recorder's Office set up a pattern and practice of allowing these corrections. They asked for an amendment. The document is real clear. The correction is real clear. We're correcting an omission. And it was accepted. Well, again, these clerks in the recorder's offices aren't lawyers. And their job is to record a document that you give. And whether that document accomplishes a purpose, whoever recorded it and intended it to, is a battle for another day. If somebody chooses to challenge that, the fact that the recorder, under what law would you say just because a recorder accepted this document and recorded it, that it has whatever, that it legally, ipso facto, because it's recorded, accomplishes the intent of the recorder? They created a pattern and practice that people rely on in Will County. And nobody to date has said you can't do it. Nobody to date has said it's not authorized. All we've heard from counsel here and the latest state's attorney was, well, there's some spectrum of corrections that can be made, might be made, fix counsel's name, change the range number. So they've passively agreed that these can occur. And that's what happened here. The first state's attorney actually suggested it and said if this occurs, we're going to have a problem here. That's what we did. All that's in the record in the 2010 case. All we did was act on the recommendation of Will County's attorney. And here we are saying, well, you can't do it. When did you do that? What years did you do that? We didn't do it until 2013. Because it's not in the record. The problem was between 2011 when the hearing happened and 2013, other hearings were going on. We were trying to get somebody to talk to us to get it resolved. And finally we just said we've got to do this. We had the same state's attorney all the time. No, we didn't. There was two different state's attorneys in the case. 2008 was one attorney. The 2010 case was another attorney. 2008 attorney said these can be done. 2010 attorney said exactly what he said. Well, you're talking about the state's attorney but an assistant? Assistant. An assistant. Who was there representing Will County in taking the positions in the case that yes, you can, maybe you can't. On certain circumstances. Well, we did it. And Will County, the recorder, accepted it. And to date nobody has said from Will County that's not valid. It's not a valid correction. All we've heard at the PTAB was maybe it's not. Well, saying that you can record a document, a certificate of correction, is a far cry from saying that certificate of correction is valid to do what it is you want it to do and the legal consequences of it. Can you answer that again? Well, just because they say you can record a certificate of correction. I mean, the fact is you can record almost anything you want. And whether it has any legal significance is whether somebody wants to challenge whatever it is you recorded. And that, I guess, is for you to decide what the pattern in practice is in Will County is. They do have legal effect. They do correct. Well, they correct, but the legal effect is for a court to determine. Correct. Not for a recorder. Correct. And that, I think, is what Justice Schmitt was saying. And I agree. It's for a court to decide whether or not there's any legal effect. We took the action based on the recommendation of the people we were opposing who said this would fix the problem. We relied on it. We relied on the behavior and practices of the Will County Recorder's Office. Well, to what detriment? What other choices did you have? In other words, when you say you had some reliance on it, to what detriment did you rely on it after the fact? To what detriment? I'm here. I understand that. But the harm had been done before that, and now you're trying to go back. So there was a reliance on it in 2013 saying we can, or after the fact, file this document. It will have this effect. I can't find any detrimental reliance, even assuming that were an issue, that, well, gee, if they hadn't, in other words, if the Assistant State's Attorney at Will County hadn't said this, then it would have solved this problem in another way. In other words, if you're going to say we relied on this, well, you've got to show we relied on it to our detriment. The detriment is we've had to continue appealing this issue. There's been multiple years on appeal here. Continue appealing or pay the taxes? Both. We've had to continue paying elevated taxes. The issue here is reduced taxes. We've had to continue paying elevated taxes that otherwise would have been reduced. And we've had to continue to appeal the decisions of the Will County Board of Review. Everything is stated now on the other years. While my client has had to pay the taxes, and frankly, if I recall correctly, the property is now in receivership because the taxes have become such a burden. So there are consequences here to the Certificate of Correction. If the decision is it has no legal effect, then it's a decision that affects plats throughout Will County that have been subject to Certificates of Correction. We raised this point at PTAB and everybody glanced over it, but that arguably is the logical conclusion if a Certificate of Correction has no legal effect. That's all I have. Today I ask that, again, we ask that the PTAB decision be reversed and my client be granted developer relief under 1038. Thank you. Thank you both for your argument today. We will take this matter under advisement. It's actually been a written disposition to finish on that. And I'll take a short recess for now.